IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KEVIN RAY HENSON, §
§
*Petitioner*, §
§
v. § Civil Action No. H-15-0010
§
WILLIAM STEPHENS, §
§
*Respondent*. §

## MEMORANDUM OPINION AND ORDER

State inmate Kevin Ray Henson, represented by *pro bono* counsel, filed this section 2254 habeas petition challenging his state conviction.  Respondent filed a motion for summary judgment (Docket Entry No. 9), and served petitioner's counsel a copy.  Despite expiration of a reasonable period of nearly four months, petitioner has failed to respond to the motion for summary judgment, and the motion is uncontested.

Based on consideration of the motion, the record, and the applicable law, the Court **GRANTS** respondent's motion for summary judgment, **DENIES** habeas relief, and **DISMISSES** this lawsuit for the reasons that follow.

## I.  BACKGROUND AND CLAIMS

Petitioner was convicted of aggravated assault with a deadly weapon and sentenced to eight years' incarceration.  The conviction was affirmed on appeal.  *Henson v. State*, 407 S.W.3d 764 (Tex. Crim. App. 2013).  The United States Supreme Court denied certiorari on

January 17, 2014. *Henson v. Texas,* 134 S. Ct. 934 (2014). Petitioner did not pursue state habeas relief.

In the instant federal habeas petition, petitioner argues that the state court erred in applying procedural state preservation of error rules to his constitutional speedy trial claim.

## II.  LEGAL STANDARDS

A.      Habeas Review

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U .S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or

unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

3

B.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, they only apply to the extent that they do not conflict with federal rules governing habeas proceedings.  Thus, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Unless a petitioner can rebut the presumption of correctness by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### III.  ANALYSIS

In affirming petitioner's conviction, the Texas Court of Criminal Appeals stated that Texas procedural preservation of error rules apply to federal Sixth Amendment speedy trial claims brought by Texas defendants on direct appeal.  The court held as follows:

4

We granted the appellant's petition for discretionary review to address whether a defendant must raise a speedy-trial claim in the trial court in order to preserve that issue for appellate review. Holding that he must, we affirm the holding of the First Court of Appeals.

On April 11, 2008, the appellant was involved in a violent altercation with a friend in which he stabbed the friend 11 times. The appellant was arrested, and, on May 9, 2008, the State charged him with aggravated assault, a third-degree felony.

The appellant's case was reset several times because the appellant had difficulty getting and keeping counsel. Finally, on January 30, 2009, the trial court appointed counsel. After that, the case was reset for pretrial hearings and conferences. On January 2, 2010, the State filed an agreed motion for continuance because a witness was sick. The next day, the judge granted the State's motion and added the notation, 'Def. ready.' The case was reset seven more times before the trial began on March 4, 2011. In total, the case was reset 25 times over three years.

The appellant agreed to every reset in this case. Each reset form states, 'The undersigned Counsel hereby agrees this case is reset for [type of hearing] to [date].' The State, the appellant, and (when the appellant had one) his trial counsel signed each form. At no point throughout this process did the appellant object to these delays or file a speedy-trial motion. The first time the appellant raised the issue of a speedy-trial violation was on appeal to the Court of Appeals, which affirmed the judgment of conviction.

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial. This ensures that the defendant is protected from oppressive pretrial incarceration, mitigates the anxiety and concern accompanying public accusations, and ensures that the defendant can mount a defense. However, the speedy-trial right is different from other constitutional rights because the deprivation of the right can benefit the defendant. Delay can cause witnesses to become unavailable or can cause their memories to fade, making it more difficult for the prosecution to meet its burden of proof. Because of these competing interests, the speedy-trial right is 'a more vague concept than other procedural rights.' There is no fixed amount of delay that is too much.

The right to a speedy trial attaches when a person becomes an accused. This can be when he is arrested or when he is charged. The Supreme Court has stated that courts must analyze these claims on an ad-hoc basis by applying a fact-specific balancing test. This test has four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice inflicted by the delay.

The question before us is whether a defendant must first preserve error for appellate review through a timely objection in the trial court before he is entitled to such an analysis.

The preservation requirement is that '[u]nless a litigant . . . moves to avail himself of a procedural benefit . . . no such benefit inures. . . . Because the judge has no independent duty in this regard, his failure . . . isn't error about which complaint might later be made on appeal.' In order to preserve error for appellate review, a defendant must make a timely request, objection, or motion in the trial court (regardless of whether or not the error complained of is constitutional). This rule applies to all but the most fundamental rights. The only exceptions are two relatively small categories of error: rights which are waivable only and denials of absolute, systemic requirements. Such errors may be raised for the first time on appeal. Neither this court nor the Supreme Court has ever clearly held that the right to a speedy trial requires preservation or cannot require preservation.

In *Barker* [*v. Wingo*], the Supreme Court distinguished the speedy-trial right from typical fundamental rights, as to which the State bears the entire burden of proving that the defendant made a knowing and voluntary waiver. 'We do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made. Such cases have involved rights which must be exercised or waived at a specific time or under clearly identifiable circumstances[.]'

Contrary to the appellant's assertion, *Barker* did not reject the notion that a defendant may be required to preserve a speedy-trial claim. It stated that the defendant does bear some responsibility for asserting the right. What *Barker* actually rejected was a very specific 'demand-waiver' rule: one in which a defendant waives his right to a speedy trial as to any period before he demanded that his right be honored.

Just as *Barker* does not specifically address the issue, our own case law is far from consistent. We have never held that a speedy-trial right is waivable – only or systemic in nature. However, before *Marin*, we delivered many opinions that ignored the issue of preservation entirely and, in some cases, held that the defendant had not waived his rights. We did not explain if or why the right was waivable only rather than subject to the more typical rules of preservation. Further complicating matters, in recent cases, we have held that the speedy-trial right must be preserved. Unfortunately, these recent opinions do not offer any justification for our change of course nor do they cite authority.

We are persuaded that the preservation requirements do apply to speedy-trial claims for several reasons. The vast majority of errors must be preserved. It is informative to look at the few rights that warrant an exception to this rule. Waivable-only rights include the right to assistance of counsel, trial by jury, and a statutorily mandated right that appointed counsel have ten days before trial to prepare. Absolute, systemic requirements include personal jurisdiction, subject-matter jurisdiction, and a penal statute's being in compliance with the separation of powers section of our state constitution.

One notable difference between these rights and the right to a speedy trial is that the other rights do not have so great an incentive for the defendant to sleep on his rights. As has been discussed, the deprivation of a speedy trial often can benefit the appellant. Without a requirement of preservation, a defendant would have great incentive not to insist upon a speedy trial and then to argue for the first time on appeal that the prosecution should be dismissed because of delay. The requirement of preservation forces the defendant to pick one strategy. He can either fail to insist upon a speedy trial and possibly reap benefits caused by delay, or he can insist on a prompt trial, and if it is not granted, argue for a dismissal. He may not do both.

Other policies are persuasive as well. If the appellant brings his complaint to the trial court first, the trial court can grant the appropriate remedy before the expense and other burdens of a trial (and an appeal) have been incurred.

Further, a requirement of preservation allows the trial court to develop the record sufficiently for a *Barker* analysis. At least two of the *Barker* factors (the reason for delay and the prejudice to the accused) are fact-specific inquiries and may not be readily apparent from the trial record. A requirement that the appellant assert his complaint at the trial level enables the court to hold

a hearing and develop this record so that the appellate courts may more accurately assess the claim.

Our conclusion is strengthened by the fact that every court of appeals to consider the issue has upheld a preservation requirement.

In this case, the appellant made no effort to demand a speedy trial. He claims that announcing ready was such a demand. However, this is not a demand for a speedy trial; instead, it merely asserts that he could go to trial at that moment should the State push for it. A speedy-trial demand should be, at the very least, unambiguous. Finally, the appellant's other actions are inconsistent with a demand for a speedy trial. He did not file a speedy-trial motion, did not request a hearing on the delays, and explicitly agreed to each and every reset. The appellant signed each agreed reset. These are not the actions of someone seeking to preserve and protect his right to a speedy trial.

We affirm the judgment of the courts below.

*Henson*, 407 S.W.3d at 766–69 (citations, emphasis omitted).

Under *Henson*, allegations of a Sixth Amendment speedy trial violation are subject to the procedural preservation of error requirements of Texas Rule of Appellate Procedure 33.1. That is, if a defendant did not assert his speedy trial rights at the state trial court level, he is procedurally barred from raising the speedy trial issue on direct appeal.

To prevail on his claim in the instant proceeding, petitioner here must show under AEDPA that the state court's determination in *Henson* was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Petitioner claims that the Texas Court of Criminal Appeals' determination is contrary to, or an unreasonable application of, the Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 522–25 (1972). According to petitioner, *Barker* held that the Sixth Amendment

8

speedy trial right is not necessarily lost if not asserted until appeal. Respondent, on the other hand, argues that the Supreme Court has made no affirmative ruling for or against the state procedural bar imposed in *Henson* and, consequently, the Texas Court of Criminal Appeals' decision did not run afoul of established federal law.

The Supreme Court has explained that a state court decision is contrary to established federal law only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 413. To determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102. This is the "only question that matters under § 2254(d)(1)." *Id.*

State procedural preservation of error requirements were not at issue in *Barker*; indeed, the defendant therein had clearly raised his speedy trial issue immediately prior to trial. Thus, the Supreme Court in *Barker* did not address the question raised in, and decided by, the state courts in *Henson*. As noted by respondent in the instant proceeding, the Supreme Court in *Barker* did not hold that procedural state preservation of error rules do – or do not – trump Sixth Amendment speedy trial protections in state courts. Accordingly, the Texas state courts did not act contrary to or unreasonably apply Supreme Court precedent in

concluding that petitioner here was procedurally barred under state preservation of error rules from raising a speedy trial issue on direct appeal.

It is not this Court's role under AEDPA to decide whether a state court reached the right resolution; rather, this Court must decide whether a state court's determination was a *reasonable* one in light of existing Supreme Court law. Because the Supreme Court has not affirmatively held that procedural state preservation of error rules do not apply to Sixth Amendment speedy trial rights, the state court's decision in *Henson* was reasonable. Petitioner is not entitled to habeas relief under AEDPA.

## IV.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 9) is **GRANTED**, habeas relief is **DENIED**, and this lawsuit is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 13th day of August, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE